IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIM. NO. 24-48** |
| v. | : | |
| **ISIAH KANGAR** | : | |

**GOVERNMENT'S CHANGE OF PLEA MEMORANDUM**

The United States of America, by its attorneys, Jacqueline C. Romero, United States Attorney for the Eastern District of Pennsylvania, and Kelly Harrell, Assistant United States Attorney for the District, and Chelsea Schinnour, Trial Attorney, U.S. Department of Justice, Human Rights and Special Prosecutions Section, respectfully submits this change of plea memorandum.

**I.   BACKGROUND**

On February 7, 2024, a federal grand jury returned a four-count Indictment against defendant Isiah Kangar, charging him with conspiracy to defraud the United States, in violation of 18 U.S.C. § 371 (Count One), fraud, misuse of visa, permits, and other documents in violation of 18 U.S.C. § 1546(a) (Count Two), unlawful procurement of citizenship or naturalization, in violation of 18 U.S.C. § 1425(a) (Count Three), and aggravated identity theft, in violation of 18 U.S.C. § 1028A (Count Four). These charges arise from the defendant's scheme to defraud the United States between approximately June 1, 2009 and February 7, 2024, during which time the defendant, a native and citizen of Liberia, used his brother's identity to unlawfully obtain a visa and permanent resident card and to attempt to obtain U.S. citizenship.

On November 25, 2024, the defendant is expected to plead guilty to Counts One through Three of the Indictment. The government and the defendant have entered into a guilty plea agreement, a copy of which is attached as Exhibit A. Pursuant to the guilty plea agreement, at the time of sentencing, the government agrees to move to dismiss Count Four of the Indictment, and the government agrees to recommend a sentence within the applicable Sentencing Guideline range. Guilty Plea Agreement, ¶ 2(a-b). The guilty plea agreement includes an appellate waiver. *Id.* at ¶ 14. As part of the guilty plea agreement, the defendant also consents to a Joint Motion for a Stipulated Judicial Order of Removal and the entry of a Stipulated Judicial Order of Removal, pursuant to Section 238(c) of the Immigration and National Act ("INA") and 8 U.S.C. § 1228(c)(5), *id.* at ¶ 5, understanding that, as a result of the entry of this Order of Removal, upon the completion of his criminal proceedings, including any sentence of incarceration, the defendant shall be removed from the United States and returned to Liberia. *Id.* at ¶ 6. The defendant also waives his rights to contest his deportation and removal under the INA, as outlined in detail in the guilty plea agreement in subparagraphs 6(a-f).

II.     **ELEMENTS OF THE OFFENSES**

    A.     **Conspiracy to defraud the United States, 18 U.S.C. § 371 (Count One)**

The government must prove the following elements beyond a reasonable doubt:

    (1)     Two or more persons agreed to defraud the United States;

    (2)     That is, by obstructing or interfering with a lawful function of the government;

    (3)     By deceitful and dishonest means;

    (4)     The defendant was a party to or member of that agreement;

    (5)     The defendant joined the agreement or conspiracy knowing of its objective

            to defraud the United States and intending to join together with at least one other conspirator to achieve that objective; and

    (6)    At least one overt act was committed in furtherance of the objective of the agreement.

*See* 6.18.371B, <u>Third Circuit Model Criminal Jury Instructions.</u>

**B.**     <u>**Fraud, misuse of visas, permits, and other documents, 18 U.S.C. § 1546(a) (Count Two)**</u>

The government must prove the following elements beyond a reasonable doubt:

    (1)    The defendant possessed and used a fraudulently obtained document, as alleged in the Indictment;

    (2)    The document in question was a visa (or permit or border crossing card or alien registration receipt card, or document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States); and

    (3)    At the time the document was possessed and used, the defendant knew it was fraudulently obtained.

*See* 2 Modern Federal Jury Instructions – Criminal 47.01.

**C.**     <u>**Unlawful procurement of citizenship or naturalization, 18 U.S.C. § 1425(a) (Count Three)**</u>

The government must prove the following elements beyond a reasonable doubt:

    (1)    The defendant procured or attempted to procure citizenship or naturalization;

    (2)    That is, by providing false information in a naturalization proceeding;

    (3)    The false information provided by the defendant related to a material matter; and

    (4)    The defendant did so knowingly, that is, the defendant knew it was contrary to law to attempt to procure citizenship or naturalization.

*See* 2 Modern Federal Jury Instructions – Criminal 33.03.

### III. STATUTORY MAXIMUM SENTENCES

The maximum possible sentence for Count One (conspiracy to defraud the United States) is: 5 years' imprisonment, a 3-year period of supervised release, a $250,000 fine, and a $100 special assessment;

The maximum possible sentence for Count Two (fraud, misuse of visas, permits, and other documents) is: 10 years' imprisonment, a 3-year period of supervised release, a $250,000 fine, and a $100 special assessment;

The maximum possible sentence for Count Three (unlawful procurement of citizenship or naturalization) is: 10 years' imprisonment, a 3-year period of supervised release, a $250,000 fine, and a $100 special assessment.

The Total Maximum and Mandatory Minimum Sentence is: 25 years' imprisonment, 3 years' supervised release, a $750,000 fine, and a $300 special assessment.

Supervised release may be revoked if its terms and conditions are violated. When supervised release is revoked, the original term of imprisonment may be increased by up to 2 years on each of Counts One through Three. Thus, a violation of supervised release increases the possible period of incarceration and makes it possible that the defendant will have to serve the original sentence, plus a substantial additional period, without credit for time already spent on supervised release.

### IV. FACTUAL BASIS FOR THE PLEA

If this case were to proceed to trial, the government would introduce evidence to establish the following facts:

The defendant is a native and citizen of Liberia. After being denied asylum in South

4

Africa in approximately November 2007 using his true name of Isiah Kangar, in August 2009, the defendant submitted Form DS-230 (Department of State Application for Immigrant Visa and Alien Registration) in the name of his younger brother, "Peter Kangar," to gain entry to the United States as the unmarried adult child of a legal permanent resident (his mother). In his application, the defendant falsely represented that he had never used any other names or aliases; that he was born in January 1981; he was 28 years old; he was single (never married); he did not have a spouse; he had no children; and he had lived in Liberia from 1981 to present. The defendant also provided a Liberian birth certificate in the name of Peter Kangar.

In October 2009, the defendant's mother signed U.S. Citizenship and Immigration Services ("USCIS") Form I-864 ("Affidavit of Support") for "Peter Kangar's" immigration to the United States. Prior to this, the defendant's mother persuaded A.B., a Liberian national and naturalized U.S. citizen, to sign an affidavit of financial support for her son, "Peter Kangar," in support of his immigration to the United States.

On October 23, 2009, the U.S. Department of State ("DOS") received "Peter Kangar's" application for an immigrant visa, which included the defendant's Form DS-230, his mother and A.B.'s Form I-864s, and documentation in support of the DS-230, including Peter Kangar's Liberian National Police Record and birth certificate. On or about January 28, 2010, the defendant appeared at the U.S. Embassy in Monrovia, Liberia posing as his brother, Peter Kangar, and met with a U.S. consular officer to attest to the information in his immigrant visa application. The defendant and his mother submitted to DNA testing, which confirmed that he was her biological son, and those results were received by the DOS.

On or about May 28, 2010, DOS issued the defendant an immigrant visa in the name of "Peter Kangar." On September 29, 2010, the defendant, using a Liberian passport in the name of

5

"Peter Kangar," presented himself at a U.S. port of entry in New York, New York and gained admission as a lawful permanent resident from a Customs and Border Protection ("CBP") immigration inspector. After entering the U.S., the defendant was issued an alien registration card (commonly referred to as a "green card") in his brother's name. In June 2020, the defendant applied to renew his green card, and USCIS issued him a new card, expiring in November 2030.

After years of living in the United States under his brother's identity, the defendant attempted to gain U.S. citizenship. On July 14, 2017, the defendant submitted a handwritten Form N-400 (Application for Naturalization) to USCIS in the name of his brother, Peter Kangar. Among other statements, the defendant made the following false representations in his N-400 application: he denied using any other names since birth; he claimed his date of birth was in January 1981; and he was single (never married). He reported four children by name and date of birth, all of whom were born prior to his completion of the DS-230 immigrant visa application in 2009, in which he denied having any children. The defendant also denied giving any U.S. government officials information that was false, fraudulent, or misleading and denied ever lying to a U.S. government official to gain entry or admission to the United States.

On September 8, 2022, the defendant appeared in Philadelphia for his naturalization interview with a USCIS officer. During this interview, which was audio and video-recorded, the defendant presented his green card, Pennsylvania Driver's License, and Liberian passport, all in the name of his younger brother, Peter Kangar, as proof of his identity. Also during this interview, under penalty of perjury, the defendant falsely claimed to be Peter Kangar, falsely adopted Peter Kangar's biographical data, and falsely denied using any other names. During the N-400 interview, the defendant also denied ever being married. He admitted that he lived in South Africa from approximately 1997-2009, before returning to Liberia to complete

6

requirements to obtain his U.S. visa, although he had failed to disclose this in his DS-230 application. USCIS subsequently denied the defendant's N-400 application on the grounds that he had made misrepresentations about his children and history of residing in South Africa, noting discrepancies between his DS-230 and N-400 applications.

While living in the United States under his brother's identity and defrauding the United States to obtain immigration benefits with that identity, the defendant often represented himself as Isiah Kangar in his personal life, and the government would have introduced evidence of this at trial. For example, on Facebook, although the defendant maintained a profile in the name of "Peter Kangar," he regularly communicated with friends and family using his true identity of Isiah, including responding to friends' messages in which they called him "Isiah," exchanging intimate messages with his wife, and discussing his use of Peter Kangar's name with his brother, the real Peter Kangar. The defendant also celebrated his birthday on Facebook on his true birthday (May 13), rather than Peter Kangar's birthday. The government also would have introduced evidence recovered from the defendant's cell phone pursuant to a federal search warrant to show that he regularly communicated with friends and family members via WhatsApp using his true name of Isiah.

During a search warrant executed on the defendant's residence at the time of his arrest on February 15, 2024, HSI agents recovered documents in the name of Isiah Kangar. These included the defendant's South Africa divorce summons in the 2021 matter of Taslima Kangar v. Isiah Kangar, and South Africa child custody papers regarding the children of Isiah Kangar and Taslima Kangar, as well as several handwritten cards addressed to or from Isiah.

At trial, the government would have also introduced evidence obtained through an MLAT request to South Africa to show that the defendant used his true name of Isiah Kangar in

7

his 2006 application for asylum and also named his spouse and children in his application. The defendant submitted a fingerprint card in support of his application, which the government also received from South Africa. In 2018, a latent fingerprint examiner with the U.S. Department of Homeland Security (DHS) compared the 2006 South Africa fingerprints for Isiah Kangar to the fingerprints held by DHS for "Peter Kangar," who immigrated to the United States in 2010, and found they were a match.

## V.   CONCLUSION

The United States respectfully submits that this summary of evidence provides a factual basis for the defendant's guilty plea to Counts One through Three of the Indictment. The facts outlined above would prove the essential elements of the offenses beyond a reasonable doubt. The government respectfully requests that the Court accept the defendant's plea of guilty to Counts One through Three of the Indictment, pursuant to the Guilty Plea Agreement attached as Exhibit A.

Respectfully submitted,

JACQUELINE C. ROMERO
United States Attorney

*/s/ Kelly Harrell*
KELLY HARRELL
Assistant United States Attorney

CHELSEA SCHINNOUR
Trial Attorney
U.S. Department of Justice
Human Rights and Special Prosecutions Section

**CERTIFICATE OF SERVICE**

I hereby certify that on this date I caused a true and correct copy of the foregoing Change of Plea Memorandum to be served via email on the following:

Jack McMahon, Esq.
mcmahonlaw@hotmail.com

*/s/ Kelly Harrell*
KELLY HARRELL
Assistant United States Attorney

Dated: November 20, 2024